Filed 5/6/15 Unmodified opinion attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESUS FRANCISCO OSIRIO,<br><br>    Defendant and Appellant. | G048876<br><br>(Super. Ct. No. P00023)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on March 30, 2015, be modified as follows:

On page 8, in the third paragraph, which continues onto page 9, beginning "The Department also argues," delete the first two sentences and replace them with the following two new sentences:

> The Attorney General also argues that any defects in the petition to revoke parole were curable. Citing Penal Code section 1007, the Attorney General argues that even if defendant's demurrer had been sustained, the trial court would have been required to give the Department 10 days to cure any defects.

This modification does not affect a change in the judgment. The petition for rehearing is DENIED.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

Filed 3/30/15; pub order 4/17/15 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G048876 |
| v. | (Super. Ct. No. P00023) |
| JESUS FRANCISCO OSORIO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Gregg L. Prickett, Judge. Reversed. Request for judicial notice. Granted.

Elizabeth Garfinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Collette C. Cavalier and Amanda E. Casillas, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

After defendant Jesus Francisco Osorio violated a condition of his parole, he was arrested and jailed. The California Department of Corrections and Rehabilitation, Division of Adult Parole Operations (the Department) recommended that defendant's parole be revoked. Defendant demurred to the petition for revocation. The trial court overruled the demurrer, revoked defendant's parole, credited him with time served, and then reinstated him on parole.

We reverse because the trial court erred in overruling the demurrer to the petition for revocation of parole. The petition was insufficient as a matter of law.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In January 2011, defendant pled guilty to one count of second degree robbery and one count of street terrorism, and was sentenced to two years in prison. Defendant began serving a three-year parole term in November 2011. One of the conditions of defendant's parole was to not associate with anyone he knew or reasonably should have known was a member or associate of a gang.

On July 2, 2013, defendant stopped his bike to talk to two men he knew were gang members. Defendant admitted he knew he was violating his parole by associating with members of the "Lopers" criminal street gang. Defendant was arrested for the parole violation, and was jailed until his parole revocation hearing.

A petition for revocation of parole was filed on July 15, 2013. At the arraignment hearing on July 18, defendant filed a demurrer and motion to dismiss. The trial court overruled the demurrer, found probable cause for the petition for revocation, and set an evidentiary hearing. At the parole revocation hearing on August 8, the court found defendant in violation of parole, revoked parole, and sentenced defendant to 73 days in jail. The court credited defendant with time served, as well as good conduct credits, and reinstated his parole. Defendant timely appealed.

2

I.

*IS DEFENDANT'S APPEAL MOOT?*

In her respondent's brief, the Attorney General argues that defendant's appeal is moot because he had completed the period of incarceration and had been returned to parole. In supplemental briefing requested by this court, the Attorney General also argues that this appeal is moot due to postjudgment developments in the case. The Attorney General filed a request for judicial notice of paperwork from the Department, reflecting defendant's discharge from parole in December 2014. These documents are official acts of the executive department of the State of California, and therefore subject to discretionary judicial notice by this court. (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

Postjudgment evidence is generally not admissible on appeal (*In re Zeth S.* (2003) 31 Cal.4th 396, 405), but it may be considered to determine whether it renders an appeal moot (*In re Josiah Z.* (2005) 36 Cal.4th 664, 676). The Attorney General contends that because defendant has been discharged from parole, his appeal is moot. We grant the Attorney General's request for judicial notice, but deny the request to dismiss defendant's appeal.

We have discretion to decide a case that, although moot, poses an issue of broad public interest that is likely to recur. (*In re Marriage of LaMusga* (2004) 32 Cal.4th 1072, 1086.) This is such a case. In *In re Law* (1973) 10 Cal.3d 21, 23, the petitioner was on parole, having been convicted of forgery. The petitioner was arrested for committing grand theft auto while on parole. (*Ibid.*) The petitioner was placed on a parole hold, and argued he had a right to be released on bail from the parole hold. (*Ibid.*) Before the petitioner's appeal was heard, he was convicted, and the prison authority revoked his parole on the forgery conviction. (*Id.* at p. 24.) The Supreme Court

3

concluded that although the petitioner's contention was moot, it raised an issue of broad public interest that was likely to recur, and it therefore heard the case. (*Id.* at pp. 23-24.)

We recognize that in *Spencer v. Kemna* (1998) 523 U.S. 1, 18, the Supreme Court refused to reverse the district court's determination that a defendant's habeas corpus petition, challenging his parole revocation, was moot because he had completed his term of imprisonment underlying the parole revocation, and it was therefore not certain that he would suffer any injury due to any error on the parole revocation. Under California's penal system, any future interactions between defendant and the justice system will likely bring to light defendant's parole revocation. Should defendant suffer a further criminal conviction, the parole revocation may be used as part of his sentencing determination. The parole revocation also may be used against defendant in other noncriminal arenas, such as employment decisions or child custody matters. In short, we cannot say with reasonable certainty that defendant's release from parole moots his claim that the demurrer to the petition for revocation should have been sustained.

A parole revocation order is a postjudgment order affecting the substantial rights of the party, and is therefore appealable. (Pen. Code, § 1237, subd. (b).) The issues defendant raises on appeal are matters of broad public interest that are likely to recur. Therefore, we exercise our discretion to consider the merits of this appeal, despite any argument that defendant's appeal is moot.

## II.

### *THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S DEMURRER TO THE PAROLE REVOCATION PETITION.*

"'[A] demurrer raises an issue of law as to the sufficiency of the accusatory pleading, and it tests only those defects appearing on the face of that pleading.' [Citation.]" (*People v. Manfredi* (2008) 169 Cal.App.4th 622, 626; see *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1090 ["A demurrer to a criminal complaint lies only to

4

challenge the sufficiency of the pleading and raises only issues of law."].) On appeal, we review the order overruling defendant's demurrer de novo. We exercise our independent judgment as to whether, as a matter of law, the petition alleged sufficient facts to justify revocation of defendant's parole. (*Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 524.)

There is no dispute that defendant violated a condition of his parole by associating with known gang members on July 2, 2013. Once a parole violation occurs, the supervising parole agency—here, the Department—may do one of two things. The Department may impose additional conditions of supervision and "intermediate sanctions." (Pen. Code, § 3000.08, subd. (d).) However, if the Department "has determined, following application of its assessment processes, that intermediate sanctions . . . are not appropriate, the supervising parole agency shall . . . petition . . . the court in the county in which the parolee is being supervised . . . to revoke parole." (*Id.*, § 3000.08, subd. (f).) The petition must include a written report detailing the terms and conditions of parole and how they were violated, the parolee's background, and the Department's recommendation to the court. (*Ibid.*) The court may then return the parolee to parole supervision, revoke parole, or refer the parolee to a reentry court. (*Ibid.*)

California Rules of Court, rule 4.541 describes the minimum requirements for the written report included with a petition to revoke probation. (Cal. Rules of Court, rule 4.541(c).) The rule also requires the Department to include in the report "the reasons for that agency's determination that intermediate sanctions without court intervention . . . are inappropriate responses to the alleged [parole] violations." (*Id.*, rule 4.541(e).)

The language of both Penal Code section 3000.08, subdivision (f) and California Rules of Court, rule 4.541(e) makes clear that less restrictive sanctions for an alleged parole violation must be considered before revocation of parole is sought.

5

Pursuant to Penal Code section 3015, the Department has developed a parole violation decisionmaking instrument (PVDMI), a form used to determine what sanctions should be imposed for a parole violation, and whether a petition to revoke parole should be filed.

According to the Department, "[t]he PVDMI is part of an overall strategy designed to reduce risk of recidivism, enhance success on parole, and utilize resources in the most effective manner. Specifically, the PVDMI: [¶] . . . Relies on the principles of evidence-based and effective interventions; [¶] . . . Identifies the appropriate response to each violation based on the offender's risk level and the severity of the violation; [¶] . . . Ensures consistency and standard responses across the Division of Adult Parole Operations (DAPO); and [¶] . . . Promotes transparency by enabling CDCR [(California Department of Corrections and Rehabilitation)] parole agents, Board of Parole Hearings (BPH) deputy commissioners, CDCR executive management, offenders, and the public to understand the rationale for violation responses and see them as part of CDCR's public safety strategy. [¶] . . . [¶] How the PVDMI works [¶] . . . When a parolee commits a violation of parole: [¶] . . . The parole agent enters all violations into the PVDMI. [¶] . . . The PVDMI assesses the parolee's risk level (using the CSRA [(California Static Risk Assessment)]) and the severity of the violation (based on a severity index) to determine the appropriate response level. For example: [¶] . . . Low CSRA risk and a least severe violation = least intensive sanction [¶] . . . Moderate CSRA risk and a moderately severe violation = moderately intensive sanction [¶] . . . High CSRA risk and a most severe violation = referral for revocation (return to custody) [¶] . . . Parole agents may recommend overriding the instrument based on stabilizing or destabilizing factors, including the lack of an appropriate program alternative in the community. [¶] . . . Unit supervisors are required to approve the agent's recommendation. If the unit supervisor disagrees, they may choose an alternative option which is more or less restrictive or, refer the case to a parole administrator for final determination. Furthermore, if the unit

supervisor disagrees with the parole agent's recommendation, they will be required to document their reasons for disagreement." (Cal. Dept. of Corrections & Rehabilitation, *Why CDCR developed a Parole Violation Decision Making Instrument (PVDMI)*, available at <http://www.cdcr.ca.gov/pvdmi/index.html> [as of Mar. 30, 2015], boldface & underscoring omitted.)

In this case, information input into the PVDMI by the Department gave defendant a California Static Risk Assessment score of "Moderate (2)" and a violation severity score of 3, and recommended the "Most Intensive A" response to his parole violation. The parole agent, however, recommended sanctions within the "Most Intensive B" category, which would permit parole revocation, and recommended defendant be incarcerated for 180 days.

In support of that recommendation, in section G of the PVDMI, the parole agent identified the following destabilizing factors: "Violation is Directly Related to Either the Commitment Offense or a Pattern of Previous Criminal Behavior . . . [¶] . . . [¶] Conviction of 186.22(a)—pattern of gang activity." (Some capitalization omitted.) The parole agent did not identify any stabilizing factors on defendant's PVDMI, although the parole revocation petition noted that defendant was employed, had a stable residence, and did not have prior parole violations, all of which are identified as categories of stabilizing factors in section G of the PVDMI form.

In section H of the PVDMI, the agent's recommended response level, the parole agent recommended the Most Intensive B response, with the following comments: "Osorio is a 21 year old committed to CDCR for Robbery 2nd. Osorio was identified by police as a NSK (Non-Stop Killers) gang member as well as a 'Lopers' gang member. Osorio signed his conditions of parole on 11/17/2011 as he understood them to be. Special condition addendum #31 states: 'You shall not contact or associate with any person you know or reasonably should have known to be a member or associate of a prison gang, disruptive group, or street gang'. It's clear that Osorio was in violation of

7

his parole and a return to custody is warranted. All though [*sic*] he was working, Osorio was well aware of the consequence by associating with other gang members." In section I of the PVDMI, the unit supervisor concurred with the parole agent's recommendation with no additional comment.

Defendant argues that the information included in the parole violation report, including, but not limited to, the PVDMI, does not meet the requirements of Penal Code section 3000.08, subdivision (f), and California Rules of Court, rule 4.541(e), in that the report does not "include the reasons for [the Department]'s determination that intermediate sanctions without court intervention . . . are inappropriate responses to the alleged violations" (Cal. Rules of Court, rule 4.541(e)).

Defendant's parole violation was conceded. But his act of violating parole was talking to two gang members for 10 minutes. Do the facts alleged in the petition for revocation of parole warrant revocation of parole? No. The Attorney General and defendant agree that the sanctions encompassed by the Most Intensive A response level— placement into mental health services or placement into a residential or outpatient drug treatment program—were not appropriate for defendant. Defendant's parole agent was therefore required to select a proposed sanction from the moderately intensive response level—including, but not limited to, increased supervision or increased limitations—or from the Most Intensive B level, which permits revocation of parole. Given the nature of defendant's parole violation, as described by the parole agent, it was error for the agent to select the Most Intensive B level sanction. Accordingly, the trial court should have sustained the demurrer to the petition for revocation.

The Department also argues that any defects in the petition to revoke parole were curable. Citing Penal Code section 1007, the Department argues that even if defendant's demurrer had been sustained, the trial court would have been required to give the Department 10 days to cure any defects. Section 1007 applies to a defendant's response to an indictment or information, not to a petition to revoke parole. Even if

8

section 1007 did apply or there was some other basis to permit amendment of a petition for revocation after a demurrer, there may be a problem of constitutional dimensions because of the time involved in filing a petition, ruling on the demurrer to the petition, amending it, and holding another hearing. Specifically, in light of this court's recent opinion in *Williams v. Superior Court* (2014) 230 Cal.App.4th 636, 643, setting forth the time periods during which various hearings must be held on a petition to revoke parole, an attempt to comply with section 1007's 10-day window for amendment of a petition might result in a due process violation.

DISPOSITION

The postjudgment order is reversed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

9

Filed 4/17/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

THE PEOPLE,

    Plaintiff and Respondent,

       v.

JESUS FRANCISCO OSORIO,

    Defendant and Appellant.

G048876

(Super. Ct. No. P00023)

ORDER GRANTING REQUEST FOR PUBLICATION

        The Orange County Public Defender has requested that our opinion, filed March 30, 2015, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED. The opinion is ordered published in the Official Reports.

                         FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

10