Filed 4/13/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br>v.<br><br>ENGLEBERT PERLAS,<br><br>        Defendant and Respondent. | A152806<br><br>(City & County of San Francisco<br>Super. Ct. No. CT-17005288) |

The People appeal from an order dismissing a parole revocation petition filed by the Department of Corrections and Rehabilitation's Division of Adult Parole Operations (Department). The petition sought to revoke Englebert Perlas's parole after he admitted drinking alcohol in violation of one of his parole conditions and allegedly struck and injured his wife during a marital dispute. The trial court sustained Perlas's demurrer to the petition and dismissed. We conclude the petition sufficiently alleged that the Department considered and rejected intermediate sanctions prior to seeking revocation and why intermediate sanctions were not appropriate in the circumstances. We reverse and remand.

## BACKGROUND

When Perlas was 17 years old, he, his then girlfriend (and now wife), and two friends met up with the victim. After shoplifting alcohol and drinking in the park, Perlas and the victim began to argue. Perlas assaulted

1

the victim several times, rendering him unconscious. Perlas remembered paying the victim $15 for marijuana he never received. Perlas took $15 from the unconscious victim, and he and his friends then repeatedly kicked the man. The victim was found dead the next day. In 1996, Perlas was convicted of second degree murder (Pen. Code, § 187)[1] and sentenced to 15 years to life in state prison.

In 2015, Perlas was released to a life-term parole. One of his agreed-upon parole conditions was that he would not consume alcohol. He also agreed to comply with all laws. Perlas acknowledged that if he violated the law or his parole conditions, his parole status could be revoked and he could be returned to state prison.

According to his parole officer, Perlas participated in and completed a transitional housing program and other "pro-social activities geared toward self-reliance" and addressing his "criminogenic needs." He strove to "build relationships . . . supportive of a crime-free lifestyle." He secured a construction job and found stable housing, and lived with his wife (whom he married at 19 while incarcerated) and their infant daughter. Perlas was on parole for more than two years without incident.

On April 8, 2017, San Francisco police officers responded to reports of a woman in distress outside Perlas's apartment building. There, officers met Perlas's wife who was holding their 10-week-old daughter. She told the officers she and Perlas were having marital problems and that Perlas threw her cell phone out their apartment window and broke it. She left the apartment with the baby and walked to the adjacent parking lot to retrieve her phone. Perlas, who was drunk, followed and attempted to leave on his

---

[1] All statutory references are to the Penal Code unless otherwise stated.

motorcycle. Fearful that he should not be riding drunk, Perlas's wife blocked his exit. He "became enraged" and threw his motorcycle to the ground. When she tried to take away Perlas's car keys, he shoved her and gave her a bloody nose. Perlas left the scene and officers could not find him. Perlas's wife initially told officers that Perlas did not hit her. She and the infant were granted a temporary emergency protective order.

The next day, officers returned to Perlas's apartment, found him there, and arrested him for spousal battery (§ 243, subd. (e)(1)), child endangerment (§ 273a, subd. (b)), and vandalism (§ 594, subd. (b)(2)(a)).

On April 10, 2017, Perlas posted bail and met with his parole officer, Peter Tram. He told Tram about the argument with his wife and that he drank beforehand. He said that when his wife blocked his exit from the parking lot, she also tried to take his cell phone from his back pocket. He spun around to try and stop her from taking the phone and "hit her in her face with his elbow," which gave her the bloody nose. Perlas voluntarily signed a form admitting he had been drinking that day.

Tram also looked through Perlas's cell phone. There were text messages from Perlas's wife to Perlas and a mutual friend. His wife's messages stated Perlas "trashed the apartment again" and that he didn't realize he had "hit [her] in the head twice" as she tried to grab his phone. Another text message stated that she told the police she was unsure how long he has been drinking but that he had been "extra stressed since [their] daughter was born so maybe for a while."

On April 14, 2017, the Department petitioned to revoke Perlas's parole. The petition alleged Perlas violated his parole conditions by consuming alcohol and committing battery on a spouse or child.

3

The evaluation portion of Tram's report, incorporated into the petition, stated: "Intermediate sanctions have been considered. However, they have been deemed not appropriate at this time." The evaluation described Perlas's 1995 commitment offense and his positive progress while on parole preceding the incident. It then explained: "Sadly, on April 8, 2017, he consumed alcohol and assaulted his wife, causing her to sustain a bloody nose. [Perlas] has a parole condition to not consume alcohol and for good reason. Domestic violence is a serious social problem and a national health concern with significant negative impacts on individual and our communities. Therefore, at this time, the [agent of record] has no choice but refer this matter to the Court, and in the event the [Perlas] is found to be in violation of parole, it is recommended that he be remanded to the custody of [the California Department of Corrections and Rehabilitation] for future parole consideration, pursuant to [section] 3000.1."

According to the report, Perlas's "California Static Risk Assessment Level" was "LOW." The report also noted the "evidence based tool used for recommendation" was the "Parole Violation Decision Making Instrument (PVDMI)." The PVDMI-recommended response level was "MOST INTENSIVE: REFER FOR REVOCATION." Tram signed the document, as did the unit supervisor.

Days later, the trial court administratively revoked Perlas's parole. Perlas filed a "Demurrer and Motion to Dismiss Petition to Revoke Parole." On August 30, 2017, the trial court granted the demurrer and dismissed the revocation petition "for failure to appropriately consider intermediate sanctions" and for "noncompliance with the requirement that parole provide a

4

basis for not considering intermediate sanctions."[2] The court reinstated Perlas to parole. The People appeal.

## DISCUSSION

The People contend the trial court erred in sustaining Perlas's demurrer and dismissing the Department's petition to revoke Perlas's parole. We agree.

*The Nature of Parole Revocation Proceedings and the Standard of Review*

The provisions of the Penal Code authorizing a demurrer and specifying the sufficiency of accusatory pleadings apply in criminal actions and proceedings. (Pen. Code, § 690 [see generally Pen. Code, §§ 948–973 & 1002–1012].) "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Code Civ. Proc., § 22.) "Every other remedy is a special proceeding." (Code Civ. Proc., § 23.) Actions are classified as either civil or criminal. (Code Civ. Proc., § 24.)

A criminal action is "[t]he proceeding by which a party charged with a public offense is accused and brought to trial and punishment . . . ." (Pen. Code, § 683; see Code Civ. Proc., § 31.) It is brought "in the name of the People of the State of California, as a party, against the person charged with the offense." (Pen. Code, § 684.) A petition to revoke parole is not a criminal action. (See *Morrissey v. Brewer* (1972) 408 U.S. 471, 480.) It is a special proceeding authorized under the Penal Code. (Pen. Code, §§ 1203.2 & 3000.08.) As such, its procedures are governed by part 2 of the Penal Code

---

[2] Perlas also moved the court to dismiss the action "in the interests of justice" under Penal Code section 1385, which the People also opposed. Because the court granted the demurrer, it declined to rule on the section 1385 motion.

5

commencing with section 681, including section 1004 specifying the grounds for demurrer and sections 948 through 973 on the sufficiency of pleadings. (Pen. Code, § 690.)

" ' "[A] demurrer raises an issue of law as to the sufficiency of the accusatory pleading, and it tests only those defects appearing on the face of that pleading." [Citation.]' [Citations.] On appeal, we review the order overruling [a] defendant's demurrer de novo. We exercise our independent judgment as to whether, as a matter of law, the petition alleged sufficient facts to justify revocation of [a] defendant's parole." (*People v. Osorio* (2015) 235 Cal.App.4th 1408, 1412 (*Osorio*), disapproved on another ground as stated in *People v. DeLeon* (2017) 3 Cal.5th 640, 646 (*DeLeon*).)

We give the accusatory pleading " ' "a reasonable interpretation and read [it] as a whole with its parts considered in their context." ' [Citation.] On appeal from a judgment entered on demurrer, the allegations of the accusatory pleading must be liberally construed and assumed to be true. [Citation.] [¶] The legal grounds for demurrer to an accusatory pleading are limited to those specifically enumerated in . . . section 1004." (*People v. Biane* (2013) 58 Cal.4th 381, 388.) Moreover, "[n]o accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." (§ 960.)

*The Petition to Revoke Parole*

When a parole violation occurs, the supervising parole agency "may impose additional and appropriate conditions of supervision, including rehabilitation and treatment services and appropriate incentives for compliance, and impose immediate, structured, and intermediate sanctions." (§ 3000.08, subd. (d); *Osorio*, *supra*, 235 Cal.App.4th at p. 1413.) However,

6

"[i]f the supervising agency has determined, following application of its assessment processes, that intermediate sanctions . . . are not appropriate, the supervising parole agency shall . . . petition . . . to revoke parole." (§ 3000.08, subd. (f); *Osorio*, at p. 1413.) The petition must include a written report detailing the terms and conditions of parole and how they were violated, the parolee's background, and the parole agency's recommendation to the court. (§ 3000.08, subd. (f).)

California Rules of Court, rule 4.541 describes the minimum requirements for the written report included with a petition to revoke probation. (Cal. Rules of Court, rule 4.541(c).) The rule requires the supervising agency to include in the report "the reasons for that agency's determination that intermediate sanctions without court intervention . . . are inappropriate responses to the alleged [parole] violations." (*Id.*, rule 4.541(e).) The specific reasons are to be "individualized to the particular parolee, as opposed to a generic statement." (*Williams v. Superior Court* (2014) 230 Cal.App.4th 636, 665, disapproved on another ground in *DeLeon*, *supra*, 3 Cal.5th at p. 653.)[3]

*Analysis*

The parole violation report accompanying the Department's revocation petition sufficiently met the requirements of section 3000.08, subdivision (f) and rule 4.541(e) to withstand demurrer.

---

[3] Upon a finding that a person has violated conditions of parole, the court may then return the parolee to parole supervision, revoke parole, or refer the parolee to a reentry court. (§ 3000.08, subd. (f)(1)–(3).) A parolee on parole after serving an indeterminate life term for murder who has violated parole conditions "shall be remanded to the custody of the Department of Corrections and Rehabilitation and the jurisdiction of the Board of Parole Hearings for the purpose of future parole consideration." (§ 3000.08, subd. (h).)

The report described the criminal conduct for which Perlas was sentenced to state prison. It also set forth the relevant terms of his parole and explained his alleged violations, including one for drinking alcohol, which he admitted, and another for assaulting and injuring his wife. In the evaluation section of the report, the Department stated expressly, "Intermediate sanctions have been considered. However, they have been deemed not appropriate at this time." According to the report, the Department used its evidence-based risk assessment instrument, the PVDMI, to determine the response to Perlas's violations.[4] The PVDMI "[i]dentifies the appropriate response to each violation based on the offender's risk level and the severity of the violation." (*Osorio, supra,* 235 Cal.App.4th at p. 1413.) Here, the PVDMI recommended revocation, the most intensive level of response. The Department's recommendation to revoke Perlas's parole was consistent with this PVDMI analysis.

The report also provided specific reasons intermediate sanctions were inappropriate. In addition to identifying the PVDMI recommendation, the report described his drinking and allegedly striking his spouse in the context of the crimes of which he had been committed. The parole agent's statement in the report that "[d]omestic violence is a serious social problem and a national health concern" reflects his assessment that Perlas's alleged

---

[4] A PVDMI is "a standardized tool that provides ranges of appropriate sanctions for parole violators given relevant case factors, including, but not limited to, offense history, risk of reoffense based on a validated risk assessment tool, need for treatment services, the number and type of current and prior parole violations, and other relevant statutory requirements." (§ 3015, subd. (b)(1).) In *Osorio, supra,* 235 Cal.App.4th 1408, the court explained PVDMI "[i]dentifies the appropriate response to each violation based on the offender's risk level and the severity of the violation." (*Id.* at p. 1413.) Parole agents may recommend overriding the PVDMI-recommended response. (See *id.* at p. 1414.)

misbehavior was serious. In light of his concerns, he "ha[d] no choice but to refer this matter to the court." In context, this statement appears to be a colloquial expression of concern over Perlas's conduct and not a conclusion that the officer was legally bound to recommend revocation. These assertions were enough to defeat Perlas's demurrer.[5]

Perlas argues "the record does not indicate [the parole agent] adequately considered intermediate sanctions before filing the revocation petition." Citing the first two sentences of the Department's evaluation ("Intermediate sanctions have been considered. However, they have been deemed not appropriate at this time."), he contends the petition merely "parrot[ed] back" section 3000.08, subdivision (f)'s requirement that intermediate sanctions be considered and rejected before a parole revocation petition is filed. Not so. Perlas's analysis ignores the PVDMI and the agent's narrative about his view of the nature of domestic violence. As discussed above, when considered as a whole the report demonstrates intermediate sanctions were properly considered.

*Osorio, supra*, 235 Cal.App.4th 1408, does not change our analysis. There, the court reversed a parole revocation, holding that the trial court erred when it overruled the parolee's demurrer. (*Id.* at p. 1415.) The court never concluded that the Department failed to properly consider intermediate sanctions. (See *id.* at pp. 1414–1415.) Rather, the court appears to have been most troubled by revocation of parole based on the relatively minor

---

[5] In supplemental briefing filed at our direction, the People request we take judicial notice of the "PVDMI form used to obtain [Perlas's] PVDMI score." We deny the People's request as unnecessary to the resolution of this appeal. (See *Appel v. Superior Court* (2013) 214 Cal.App.4th 329, 342, fn. 6 [judicial notice denied where materials are not "relevant or necessary" to the court's analysis].)

nature of the violation in that case ("talking to gang members for 10 minutes") and the agency's rejection of the PVDMI recommendation for a moderately intensive response. (*Id.* at p. 1415.) In contrast, Perlas's admitted violation for drinking alcohol and alleged violation for hitting his spouse and causing injury could reasonably be considered serious violations, especially in light of Perlas's original commitment following his assault of a man during a day of drinking.

Perlas also argues that the Department "failed to include the reasons for its determination that intermediate sanctions without court intervention were inappropriate," as required by California Rules of Court, rule 4.451(e). This argument maintains that the Department failed to comply by "not singling out even one intermediate sanction it considered (and rejected) or providing even one on example of why Mr. Perlas's conduct rendered him unamendable to continued placement on parole." Again, we disagree. There is no requirement in rule 4.451 that the supervising agency list and reject any specific intermediate sanction in a petition seeking revocation. (See *People v. Hronchak* (2016) 2 Cal.App.5th 884, 892 [petition complied with rule 4.541 even without specific discussion of each intermediate sanction considered and rejected].)

Even if the alleged basis for recommending revocation was technically deficient, we are hard pressed to discern any resulting prejudice to Perlas. A defendant's right to be informed of the charges against him is satisfied when he is advised sufficiently to enable him to prepare and present a defense and is not taken by surprise. (*People v. Stone* (2009) 46 Cal.4th 131, 141.) The petition here disclosed the parole agent's recommendation, the recommendation's basis in the PVDMI, and the agent's view of the seriousness of Perlas's conduct. We fail to see how a more detailed

10

explanation of the basis for the recommendation would better inform Perlas or better enable him to defend the charges.

Moreover, assuming, without deciding, that the revocation petition were vulnerable to demurrer for the technical deficiency that it does not fully state the basis for a recommended revocation under section 1004, the trial court had the discretion to afford the Department an opportunity to amend.[6] (*People v. Manfredi* (2008) 169 Cal.App.4th 622, 626.)  Here, the court does not appear to have considered whether the Department could sufficiently state its reasons for revocation in an amended pleading.  The court in *Osorio*, *supra*, 235 Cal.App.4th 1408, rejected the notion of amendment in light of the time constraints that apply to petitions to revoke parole.  (*Id.* at p. 1415.) That consideration does not appear material in this case.  Perlas waived the time for his probable cause hearing and was not in custody during the pendency of the revocation proceedings.  Moreover, an accusation may be amended orally on the record.  (See *People v. Sandoval* (2006) 140 Cal.App.4th 111, 132.)

There is one more consideration that may have affected the Department's decision to seek revocation here that is not fully explored in the

---

[6] Section 1004 allows a defendant to demur to an accusatory pleading at any time prior to the entry of a plea under these circumstances:  "1. If an indictment, that the grand jury by which it was found had no legal authority to inquire into the offense charged, or, if an information or complaint that the court has no jurisdiction of the offense charged therein; [¶] 2. That it does not substantially conform to the provisions of Sections 950 and 952, and also Section 951 in case of an indictment or information; [¶] 3. That more than one offense is charged, except as provided in Section 954; [¶] 4. That the facts stated do not constitute a public offense; [¶] 5. That it contains matter which, if true, would constitute a legal justification or excuse of the offense charged, or other legal bar to the prosecution."  (§ 1004.)  Of these, the one that is arguably applicable is "the facts stated do not constitute a public offense."

11

record.  Perlas is on lifetime parole after serving a term for second degree murder.  (§ 3000.1, subd. (a)(1).)  The petition to revoke his parole was filed after San Francisco police arrested and charged him with three misdemeanors based upon the conduct alleged in the petition to revoke parole.  In the event he is convicted of any of the charges, his revocation would be mandatory under section 3000.08, subdivision (h).  The import of the pendency of the criminal charges and any nexus to the decision to proceed with revocation is yet unexplored.

Finally, it appears that prior to this April 2017 incident, Perlas had more than two years on parole without incident during which he had made substantial progress.  He secured stable housing, was working, and became a father.  There also appears to be family and community support for Perlas that was evident during the course of the revocation proceedings.  These factors may be significant for the court in deciding whether the petition or the criminal action should be dismissed in the interests of justice pursuant to section 1385.  Perlas sought dismissal of the petition on this ground in the trial court.  In light of the ruling on the demurrer, the court declined to address this request.  We decide here only that the Department's petition to revoke parole adequately demonstrated the agency had considered intermediate sanctions prior to seeking revocation and sufficiently explained why such sanctions were not proper under the circumstances.  We express no view on the availability of relief or the showing made by Perlas in support of his section 1385 request to dismiss.

In light of our holding that the Department satisfied the requirements of section 3000.08, subdivision (f) and rule 4.541, we need not and will not address the People's further contentions on appeal.

12

## DISPOSITION

The order sustaining the demurrer and dismissing the petition for revocation is reversed and remanded.

_____

Siggins, P. J.

WE CONCUR:

_____

Petrou, J.

_____

Jackson, J.

A152806/*People v. Englebert Perlas*

14

A152806/People v. Englebert Perlas

| | |
|---|---|
| Trial Court: | Superior Court of the City and County of San Francisco |
| Trial Judge: | Brown, Tracie L., J. |
| Counsel: | Xavier Becerra, Attorney General, Phillip J. Lindsay, Assistant Attorney General, Sara J. Romano and Michael G. Lagrama, Deputy Attorneys General, for plaintiff and appellant. |
| | Jeremy Price, under appointment by the Court of Appeal, and Jonathan Soglin for defendant and respondent. |