Filed 2/6/24  P. v. Prieto CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B327387 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 2PHO4976) |
| v. | |
| JEFFREY PRIETO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Robert Kawahara, Temporary Judge. (Pursuant to Cal. Const., art VI, § 21.)  Affirmed.

Megan Denkers Baca, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising

Deputy Attorney General, and Lindsay Boyd, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

After serving more than 30 years in prison for murder, Jeffrey Prieto was released on parole, subject to various terms and conditions, including that he report to his parole agent as required and that he enroll in and complete a substance abuse program. After failing to comply with these terms, the trial court revoked Prieto's parole and remanded him back to the Department of Corrections and Rehabilitation and the Board of Parole Hearings. Prieto appeals, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Prieto Is Convicted of Murder, Released on Parole, and Expelled from His Drug Program*

In 1988 a jury convicted Prieto of second degree murder, and the trial court sentenced him to prison for 15 years to life. He was released on parole in April 2018. Because Prieto had a history of substance abuse, the terms and conditions of parole required him to enroll in and complete a substance abuse program. He also had to comply with all directions and instructions of his parole agent and to inform his agent of any change in residence within 72 hours.

Prieto's parole agent was Tony Manzanares. Agent Manzanares saw Prieto semimonthly from April 2018 until June 2022. He referred Prieto to substance abuse and housing programs multiple times, including programs in San Fernando, Hollywood, and Van Nuys. Prieto, however, did not enroll in

most of those programs and, when did enroll, he refused to participate voluntarily and left after a month or so. In all, Prieto was charged five times with violating the terms and conditions of his parole, including for absconding from parole supervision, failing to participate in a housing program, and using controlled substances (methamphetamine).[1]

After the last parole violation charge, the court referred Prieto to a residential substance abuse program called God's Property Sober Living Foundation and dismissed the petition alleging the violation. On May 20, 2022 Prieto enrolled in the program, which required a "30-day blackout" period where Prieto could not leave the facility and a 90-day period where he had "to attend all meetings, all groups, [and] all classes." Within a few weeks, however, God's Property asked Prieto to leave because he violated the program's no-tolerance policy against disrespecting staff and he refused to attend mandatory meetings. On several occasions he swore at staff members in front of other patients and said, "I'm not going to listen to you faggots." On another occasion, Prieto stayed in bed and refused to participate in mandatory substance abuse counseling meetings.[2] After giving Prieto warnings and "multiple write-ups" for "cursing out staff,"

---

[1] Prieto testified this incident was the only time he used a controlled substance in the last 10 years.

[2] Prieto denied that he made these comments or that he disrespected staff. He said the program immediately discharged him one day when he did not go to a meeting because he was not feeling well. He told his clinical social worker at the public defender's office the same thing. Prieto said he participated in every group meeting and gave his "best effort not to be kicked out of that house."

3

God's Property on June 7, 2022 asked Prieto to leave the facility, discharged him from the program, and notified the referring agent or the court he had been discharged.[3]

B. *Prieto Absconds from Parole Supervision and Cannot Be Found*

Agent Manzanares called the facility when he learned Prieto had been discharged on June 7, 2022. Agent Manzanares first tried unsuccessfully to reach Pietro by phone. He then tried to find Prieto by driving around Los Angeles and looking in locations he had seen Prieto in the past, including the neighborhood near the God's Property facility, an alley behind the residence of Prieto's sister, and a park. Agent Manzanares also checked law enforcement databases, the coroner's office, and a local hospital, but he could not find Prieto. Agent Manzanares also confirmed Prieto had not reported or been in contact with the parole office.

Agent Manzanares was unable to find Prieto and never heard from him. Prieto had Agent Manzanares's cell phone number, his direct office line number, and the parole office main number, but, according to Agent Manzanares, he had no communication with Prieto after June 7, 2022.

---

[3] By the time of the probation violation hearing, God's Property was willing to take Prieto back into the program (although at a different facility) because the director of the program "believes that everybody deserves a second chance." God's Property did not make this offer on June 7, 2022, however, because Prieto gave no indication that he was sorry for his behavior, that he wanted to stay, or that he wanted help.

Agent Manzanares learned Prieto was arrested on August 25, 2022.[4]

### C. *The Trial Court Revokes Parole*

The Department's Division of Adult Parole Operations filed a petition to revoke Prieto's parole. The petition alleged God's Property had terminated Prieto from the facility for "not following the rules and requirements of the program" and "being disrespectful to staff." The petition also alleged Prieto had violated the terms and conditions of his parole five times, including by absconding from parole supervision, failing to contact his parole agent, and failing "to successfully complete a substance abuse program." Agent Manzanares's parole violation report attached to the petition stated: "Alternative sanctions have been considered . . . but deemed inappropriate due to Prieto's unwillingness to comply with his conditions of parole imposed and a court order to enroll in and successfully complete a drug treatment program. Prieto has an extensive history of non-compliance with [Division of Adult Parole Operations] directives and refuses to participate and successfully complete treatment. This will be Prieto's sixth parole violation to date including six incidents related to drug use or absconding in the past year. The fact that Prieto continually refuses to comply with multiple conditions of his parole indicates an ongoing pattern of criminality making him a threat to public safety. Prieto needs to

---

[4] Pietro stated that he called Agent Manzanares and left him a message, but that the battery in the phone he was using died. Prieto also said that on June 8, 2022 he left a voicemail message with his social worker, stating he had been expelled from God's Property and was "back on the street." The social worker, however, was unable to reach him, and he never called her back.

be held accountable for his actions to prevent further criminal acts. The Division of Adult Parole Operations and the court [have] attempted to maintain Prieto in the community with no success. A return to custody is necessary to ensure his extensive drug history and absconding does not result in a violent crime." While the parole violation report recommended returning Prieto to custody, the Parole Violation Decision Making Instrument (known by the initialism PVDMI)[5] recommended "continue on parole with remedial sanctions."

Prieto filed a demurrer to the petition. Citing *People v. Osorio* (2015) 235 Cal.App.4th 1408, he argued that the petition did not include a discussion of "present attempts made to find an appropriate, less restrictive, remedial sanction, beyond the bare mention" of certain programs and that he was "not accused of any criminal activity in the current petition." Prieto argued that God's Property was willing to accept him back into the program and that counsel for Prieto "confirmed" the program would place Prieto in a different location. Prieto asserted the Department "could have identified and considered a host of appropriate remedial sanctions before filing the petition, such as flash

---

[5]     "'[The] PVDMI is "a standardized tool that provides ranges of appropriate sanctions for parole violators given relevant case factors, including, but not limited to, offense history, risk of reoffense based on a validated risk assessment tool, need for treatment services, the number and type of current and prior parole violations, and other relevant statutory requirements." [Citation.] . . . [The] PVDMI "'[i]dentifies the appropriate response to each violation based on the offender's risk level and the severity of the violation.'" [Citation.] Parole agents may recommend overriding the PVDMI-recommended response.'" (*People v. Williams* (2021) 71 Cal.App.5th 1029, 1039, fn. 7.)

6

incarceration, anonymous meetings, a dual diagnosis treatment program, and transitional housing with supportive outpatient drug treatment and/or increased mental health services."

The trial court, recognizing it could "only consider what is within the four corners of the petition, like it or not,"[6] overruled the demurrer. The court stated: "My obligation [or] duty at this point is to just determine whether or not there was a reasonable evaluation for intermediate sanctions and the [Department] properly brought it before the court, and I am bound by the four corners of the petition." The court added: "I think that the [Department] has reasonably considered [and] used alternate programming to have Mr. Prieto comply and address the issues he has, substance abuse and otherwise, and it's just not working."

At the ensuing parole violation hearing, the trial court acknowledged that, if it sustained the petition, the court had to return Prieto, who was on parole for an indeterminate sentence for murder, "to the Board of Parole Hearings for further parole considerations." After hearing the testimony of the witnesses and the argument of counsel, the court found Prieto violated the terms of his parole by failing to stay enrolled in and complete a substance abuse program. The court credited the testimony of the manager of God's Property, who stated Prieto made derogatory statements to staff members and "voluntarily refused to go to the program." The court also found Prieto absconded from parole by not notifying his parole agent, whom the court found "to be very credible," when God's Property terminated Prieto from the program and by not contacting the agent from

---

[6] The court stated: "You can have 20,000 letters of support and all the great things, [but] I can't consider that in a demurrer."

June 7, 2022 to August 25, 2022, when Prieto was arrested.  The court described Prieto's conduct as "the gravamen of absconding." After stating the court had given Prieto multiple opportunities to continue under parole supervision, the court sustained both counts in the petition (failing to complete a drug treatment program and absconding) and remanded Prieto to the custody of the Department and the jurisdiction of the Board of Parole Hearings for further parole consideration.  Prieto timely appealed.

## DISCUSSION

Prieto argues the trial court erred in overruling his demurrer because the report attached to the petition "did not include a statement" by Prieto, as required by the rules governing petitions to revoke parole, and instead stated, "'Due to time constraints, Prieto was not interviewed.'"  He also argues substantial evidence did not support the trial court's finding Prieto violated the terms and conditions of his parole.  Both arguments lack merit.

A.     *The Trial Court Did Not Err in Overruling Prieto's Demurrer to the Petition*

1.     *Applicable Law and Standard of Review*

"When defendants convicted of certain offenses, including murder, are released from prison, they are placed on parole under the supervision of [the Department]."  (*People v. Williams* (2021) 71 Cal.App.5th 1029, 1038.)  "If a parole violation occurs, [Penal

Code] section 3000.08, subdivision (d),[7] permits the supervising parole agency to impose additional conditions of supervision and 'intermediate sanctions' without court intervention: 'Upon review of the alleged violation and a finding of good cause that the parolee has committed a violation of law or violated his or her conditions of parole, the supervising parole agency may impose additional and appropriate conditions of supervision, including rehabilitation and treatment services and appropriate incentives for compliance, and impose immediate, structured, and intermediate sanctions for parole violations, including flash incarceration in a city or a county jail." (*People v. Zamudio* (2017) 12 Cal.App.5th 8, 13; see § 3000.08. subd. (e) ["'Flash incarceration' is a period of detention in a city or a county jail due to a violation of a parolee's conditions of parole."].)

"Section 3000.08, subdivision (f), authorizes the supervising parole agency to petition to revoke parole only after the agency has determined that intermediate sanctions are not appropriate: 'If the supervising parole agency has determined, following application of its assessment processes, that intermediate sanctions up to and including flash incarceration are not appropriate, the supervising parole agency shall, pursuant to Section 1203.2, petition . . . the court in the county in which the parolee is being supervised . . . to revoke parole.'" (*People v. Zamudio*, *supra*, 12 Cal.App.5th at p. 14.) "Section 3000.08, subdivision (f), requires a petition to revoke parole filed by the supervising parole agency to include a written report containing relevant information regarding the parolee and the recommendation to revoke parole and directs the Judicial Council to adopt forms and rules of court to implement it. [California

---

7        Statutory references are to the Penal Code.

9

Rules of Court, r]ule 4.541(c),[8] in turn, describes the minimum requirements for the written report included with the supervising parole agency's petition to revoke; and rule 4.451(e) provides, in addition to those minimum contents, the petition "must include the reasons for that agency's determination that intermediate sanctions without court intervention . . . are inappropriate responses to the alleged violations.'" (*Zamudio*, at p. 14; see *Department of Corrections & Rehabilitation v. Superior Court* (2023) 94 Cal.App.5th 1025, 1036.)

Section 1203.2 "governs the procedure for revocation of various forms of supervision, including both probation and parole. . . . [S]ection 1203.2, subdivision (b)(1), authorizes the 'parole officer, or the district attorney' to petition to modify or revoke parole. That subdivision further provides, upon filing of a petition, '[t]he court shall refer . . . the petition to the . . . parole officer. After the receipt of a written report from the . . . parole officer, the court shall read and consider the report and . . . the petition and may modify [or] revoke' parole supervision 'if the interests of justice so require.'" (*People v. Zamudio*, *supra*, 12 Cal.App.5th at p. 14; see *People v. Williams*, *supra*, 71 Cal.App.5th at pp. 1038-1039; *People v. Perlas* (2020) 47 Cal.App.5th 826, 832-833; *People v. Hronchak* (2016) 2 Cal.App.5th 884, 890.)

In most cases, "[i]f a parolee is found in violation of the conditions of parole, a court is authorized to (1) return the parolee to parole supervision with a modification of conditions, if appropriate, including a period of incarceration in county jail of up to 180 days for each revocation [citation]; (2) revoke parole and order the person to confinement in the county jail for up to

---

8      Citations to rules are to the California Rules of Court.

10

180 days [citation]; (3) refer the parolee to a reentry court pursuant to section 3015 or other evidence-based program in the court's discretion [citation]; or (4) place the parolee on electronic monitoring as a condition of reinstatement on parole or as an intermediate sanction in lieu of returning the parolee to custody." (*People v. Zamudio, supra*, 12 Cal.App.5th at p. 14.) But where, as here, the supervised person is a "lifetime parolee" who was convicted of murder and received a sentence "with a maximum term of life imprisonment," (§ 3000.1) a "special rule applies." (*Department of Corrections & Rehabilitation v. Superior Court, supra*, 94 Cal.App.5th at p. 1036.) "'[O]nce the court finds that a lifetime parolee has violated parole, revocation is "mandatory."' [Citation.] This legislative mandate is codified in section 3000.08[, subdivision] (h), which provides that, '[n]otwithstanding any other law,' if the court determines a lifetime parolee 'has committed a violation of law or violated his or her conditions of parole, the person on parole shall be remanded to the custody of [the Department] and the jurisdiction of the [Board of Parole Hearings] for the purpose of future parole consideration.'" (*Department of Corrections & Rehabilitation*, at p. 1037; see *People v. Williams, supra*, 71 Cal.App.5th at p. 1040 [usual options for a parole violation "do not exist when the court adjudicates a petition concerning a lifetime parolee"].)

Finally, a "demurrer raises an issue of law as to the sufficiency of the accusatory pleading, and it tests only those defects appearing on the face of that pleading. On appeal, we review the order overruling [a] defendant's demurrer de novo. We exercise our independent judgment as to whether, as a matter of law, the petition alleged sufficient facts to justify revocation of [a] defendant's parole. We give the accusatory pleading a

11

reasonable interpretation and read [it] as a whole with its parts considered in their context.  On appeal from a judgment entered on demurrer, the allegations of the accusatory pleading must be liberally construed and assumed to be true. . . .  Moreover, [n]o accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits."  (*People v. Perlas*, *supra*, 47 Cal.App.5th at p. 832, cleaned up.)

2.      *The Petition Was Sufficient Under Rule 4.541*

Rule 4.541(c) lists the information a petition to revoke parole supervision must include.  (See § 3000.08, subd. (f).)  In addition to things like the supervised person's custody status, record of conviction, and (if requested by the court) risk of recidivism (including "any validated risk-needs assessments"), the rule requires the petition to include a report stating:  "All relevant terms and conditions of supervision and the circumstances of the alleged violations, including a summary of any statement made by the supervised person, and any victim information, including statements and type and amount of loss."  (Rule 4.541(c)(2).)  Prieto argues the trial court erred in overruling his demurrer because the petition did not include all the information required by this rule.  In particular, he maintains the petition was defective because it did not include any statement made by him.  Without citing any authority, Prieto asserts that rule 4.541(c) "required the agency to include a statement from" him, that the Department's "failure to do so rendered the petition for revocation deficient as a matter of law," and that, "[a]bsent a supervised person's statement contained

12

within this record, the trial court is left without the full scope of the circumstances surrounding the alleged violation."

Prieto, however, did not demur to the petition on this ground. As discussed, he argued in the trial court the petition was defective because it did not contain a discussion of attempts to impose less restrictive and available remedial sanctions (an argument he does not pursue on appeal), not because it did not include a statement from him. Therefore, as the People argue, he forfeited the argument. (See *People v. Hronchak*, *supra*, 2 Cal.App.5th at p. 892, fn. 5 [forfeiture generally applies in parole revocation proceedings]; see also *Truck Ins. Exchange v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635 [""a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court,"" and such "'arguments raised for the first time on appeal are generally deemed forfeited'"].) Forfeiture is particularly appropriate where, as here, the Department could have cured any defect in the petition or the report by amendment. (See *People v. McCullough* (2013) 56 Cal.4th 589, 593 [the purpose of the forfeiture rule ""'is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected,'"" and it "'is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided'"]; see also *People v. Arredondo* (2019) 8 Cal.5th 694, 710 [the reason for the forfeiture rule "is to allow the trial court to correct its errors and 'to prevent gamesmanship by the defense'"].)

Forfeiture aside, Prieto misreads rule 4.541(c). The petition included everything the rule requires, including Prieto's personal information, custody status, circumstances of arrest,

pending cases, background, and criminal record; the terms and conditions the Department was alleging he violated; and the facts and circumstances surrounding his alleged violations of those terms and conditions. (See rule 4.541(c)(1), (2).) The report attached to the petition detailed the events at God's Property that caused the program to discharge Prieto, Prieto's failure to contact his parole agent and the agent's exhaustive efforts to find Prieto, and how the extensive efforts by the court and the Department to try alternative sanctions had all failed and ended in repeated parole violation proceedings. The report listed six prior alleged parole violations (in December 2018, September 2019, November 2019, January 2020, February 2020, and September 2021) that resulted in court orders continuing him on parole or dismissing the petition with referrals to transition housing or drug treatment programs.

Contrary to Prieto's contention, rule 4.541(c) does not require the Department to seek out and obtain a statement by the supervised person and include it in the report, any more than it requires the Department to locate, interview, and obtain statements from victims. The rule only requires the Department to include in its report accompanying the petition statements by the supervised person (or, for that matter, victims) if the Department has "any." Interpreting the rule not to require the Department to go out and get a statement from the supervised person makes sense because, as here, the Department may not know where the supervised person is. Obtaining a statement from an absconding supervised person may not be possible.

Finally, any defect in the petition because it lacked a statement by Prieto did not prejudice him. "A defendant's right to be informed of the charges against him or her is satisfied when

he or she is advised sufficiently to enable him or her to prepare and present a defense and is not taken by surprise." (*People v. Perlas*, *supra*, 47 Cal.App.5th at p. 835.) The petition here disclosed the recommendation generated by the PVDMI, the contrary recommendation in Agent Manzanares's parole violation report, the seriousness of Prieto's conduct, the failure of multiple intermediate sanctions, and Prieto's history of parole violations and program failures. It is hard to see how including a statement by Prieto in the report would have better prepared him to defend the charges. (See *ibid.*) And Prieto had the opportunity to give, and in fact gave, his version of the facts at the hearing. Thus, as Prieto concedes, "had the agency interviewed" him to get a statement for the report, "he would have given the same statement as he attempted to give Agent Manzanares, as he gave to his social worker, and to which he testified . . . ." To the extent the trial court did not have at the pleading stage Prieto's side of the story and a "full scope of the circumstances" of the violation, that was the purpose of the probation violation hearing, where the trial court heard testimony from Prieto and the other witnesses about all the facts and circumstances.[9]

---

[9] Because the argument lacks merit, trial counsel for Prieto did not provide ineffective assistance by failing to raise it. (See *People v. Ochoa* (1998) 19 Cal.4th 353, 463 ["Representation does not become deficient for failing to make meritless objections."]; *People v. Kipp* (1998) 18 Cal.4th 349, 377 ["trial attorney's failure to assert a meritless defense does not demonstrate ineffective assistance of counsel"].)

B.     *Substantial Evidence Supported the Court's Finding Prieto Violated the Terms and Conditions of His Parole*

Prieto argues the trial court erred in finding he violated the condition of his parole that required him to maintain contact with his parole agent because, rather than willfully absconding, Prieto made efforts to contact his parole agent and social worker.  Prieto also argues that, because the condition requiring him to enroll in and complete a substance abuse program did not require him to complete the program by any particular date, and by the time of the parole violation hearing God's Property was willing to re-admit him into the program, he did not violate that condition either.  Again, both arguments fail.

1.     *Applicable Law and Standard of Review*

"Parole revocation determinations shall be based upon a preponderance of evidence."  (§ 3044, subd. (a)(5); see *In re Eddie M.* (2003) 31 Cal.4th 480, 501; *People v. Butcher* (2016) 247 Cal.App.4th 310, 318; *In re Miller* (2006) 145 Cal.App.4th 1228, 1234-1235.)  We review the trial court's findings for substantial evidence.  (*People v. Urke* (2011) 197 Cal.App.4th 766, 773; *People v. Kurey* (2001) 88 Cal.App.4th 840, 848.)  On review for substantial evidence, "great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court.'"  (*Urke*, at p. 773; see *Kurey*, at pp. 848-849 ["our review is limited to the determination of whether, upon review of the entire record,

16

there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision"]; see also *People v. Shepherd* (2007) 151 Cal.App.4th 1193, 1198 ["Parole revocation and probation revocation after the imposition of a sentence are constitutionally indistinguishable."].)

2.    *Substantial Evidence Supported the Trial Court's Findings*

The trial court found Prieto violated the terms and conditions of his parole by failing to maintain contact with his parole agent and failing to inform his parole agent of a change in his residence.  Substantial evidence supported that finding.  After God's Property expelled him from the program, Prieto did not call or otherwise contact Agent Manzanares, even though they had spoken by phone before.  Although Prieto claimed he tried to contact Agent Manzanares but was unsuccessful, the trial court credited the agent's contrary testimony.  And even apart from that factual dispute (which the trial court resolved against Prieto), there was no dispute Prieto did not contact Agent Manzanares, about a change in residence or otherwise, from early June 2022 to late August 2022.  Prieto even avoided Agent Manzanares, or at least—despite the agent's considerable efforts—was not found at several locations throughout the city where Agent Manzanares had previously seen Prieto.

The trial court also found Prieto violated the terms and conditions of parole by failing to stay enrolled in and complete a substance abuse program.  Substantial evidence supported that finding too.  God's Property expelled Prieto from the program for engaging in misconduct, violating the program's rules, and refusing to attend mandatory programming.  Prieto denied the

17

misconduct and had an excuse for not attending classes. But again, the trial court believed the manager of the program, not Prieto. (See *People v. Ramirez* (2022) 13 Cal.5th 997, 1118 ["""[w]e do not reweigh evidence or reevaluate a witness's credibility"""]; *People v. Tully* (2012) 54 Cal.4th 952, 984 ["[w]e do not second-guess the trial court's credibility findings"].)

Prieto argues he did not violate the condition of his parole requiring him to enroll in and complete a substance abuse program because that condition did not require him to complete the program "before any given date, or even within a reasonable timeframe." The trial court, however, could reasonably conclude the terms and conditions of Prieto's parole required him to complete the program within a reasonable time. (See *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1117 [courts may construe probation conditions to include terms that are "fairly implied"]; *People v. Bravo* (1987) 43 Cal.3d 600, 607 [probation condition "must . . . be interpreted on the basis of what a reasonable person would understand from the language of the condition"].) The trial court could also reasonably infer, from Prieto's conduct at God's Property and his history of leaving substance abuse programs, Prieto did not intend to complete, or even remain enrolled in, such a program. (See *People v. Buell* (2017) 16 Cal.App.5th 682, 687 [on appeal from an order revoking mandatory supervision, reviewing courts "'give great deference to the trial court and resolve all inferences and intendments in favor of the judgment'"].)

## DISPOSITION

The order is affirmed.

SEGAL, Acting P. J.

We concur:

FEUER, J.

MARTINEZ, J.