Filed 1/9/17.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G052436 |
| v. | (Super. Ct. No. R00817) |
| OSWALDO IVAN GONZALEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Kimberly Menninger, Judge. Reversed.

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Christine Levingston Bergman, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

## INTRODUCTION

Oswaldo Ivan Gonzalez appeals from a postjudgment order granting a petition under Penal Code sections 1203.2, subdivision (b), and 3455, subdivision (a), to revoke his postrelease community supervision (PRCS). The trial court found that Gonzalez, who is homeless, violated the terms and conditions of PRCS by failing to report his change of residence after he was released from a facility in which he had been held pursuant to Welfare and Institutions Code section 5150, subdivision (a) (section 5150(a)). The court ordered Gonzalez to serve 180 days in jail, with credit for time served, and reinstated PRCS.

We conclude the trial court erred by finding Gonzalez violated the condition of PRCS that he report a change of residence. The Postrelease Community Supervision Act of 2011, Penal Code section 3450 et seq. (the PRCS Act), does not include a definition of the word "residence." With no definition of residence in the PRCS Act, we turn to the definition of residence given in Penal Code section 290.011, subdivision (g), which is part of the Sex Offender Registration Act, Penal Code section 290 et seq. Under the broad definition of residence in section 290.011, subdivision (g), Gonzalez was homeless and had no residence before he was placed on a hold under section 5150(a). When he was released from the hold, he returned to the street. Thus, he had neither a residence nor a change of residence to report. For that reason, we reverse.

The lack of a definition of residence is a glaring omission in the PRCS Act that leaves open issues about the reporting obligations of those persons subject to PRCS who, like Gonzalez, are homeless. The Sex Offender Registration Act, in contrast, not only defines "residence" but defines "transient" (Pen. Code, § 290.011, subd. (g)) and sets forth a means by which transients can comply with registration requirements (*id.*, § 290.011, subd. (a)). We respectfully urge the Legislature to amend the PRCS Act to

2

define "residence" and to address the issue of the obligations of homeless persons subject to PRCS to report residence and changes in residence.

Our conclusion might be different if the trial court found, or the Attorney General argued, that Gonzalez violated PRCS by not reporting, as directed, to his probation officer. We emphasize that a person subject to PRCS, whether or not that person is homeless, has an obligation under Penal Code section 3453, subdivision (e) to report "as directed" by the supervising county agency. Here, the petition to revoke PRCS alleged Gonzalez failed to report, as directed by his probation officer, after his release from the section 5150(a) hold. The trial court did not, however, make a finding on that allegation. On appeal, the Attorney General does not argue that Gonzalez violated the condition of PRCS that he report as directed, and, therefore, we do not address whether he failed to do so.

## FACTS AND PROCEDURAL HISTORY

### I.

### The Petition to Revoke PRCS

In January 2012, Gonzalez was convicted of violating Penal Code section 273.5, subdivision (a) (corporal injury to spouse or cohabitant) and was sentenced to two years in prison. He was released from prison into PRCS in July 2012. His scheduled discharge date from PRCS was December 29, 2015.

The terms and conditions of Gonzalez's PRCS included the following: "RELEASE, REPORTING, RESIDENCE: Unless other arrangements are approved in writing, you will report to your Probation Officer within two working days following any release from custody. You will inform your Probation Officer of your residence, employment, education, or training. Any change or anticipated changes in residence, employment, education, or training shall be reported to your Probation Officer in

3

advance.  You shall inform the Probation Officer of new employment within 3 business days of that entry."

In July 2015, the Orange County Probation Department (the Probation Department) filed a petition to revoke Gonzalez's PRCS (the Petition).  An attachment to the Petition alleged:  "According to records of the . . . Probation Department, the offender was released from state prison on 7/1/12.  He was last released from the Orange County Jail on 4/5/15 after serving 160 days in custody for his seventh violation.  The offender reported to [the] Probation [Department] upon his release; however, on 5/9/15, he was released from a mental health assessment.  He failed to contact [the] Probation [Department], thereafter as directed.  On 6/1/15 the Court issued a bench warrant . . . due to the offender's whereabouts being unknown.  On 7/9/15, he was arrested by the Stanton Police Department . . . and held on said warrant."

## II.

### The Evidentiary Hearing on the Petition

An evidentiary hearing was conducted on the Petition.  Gonzalez's probation officer, Debby Rodriguez, testified.  Rodriguez supervised Gonzalez on PRCS.  She testified that on April 30, 2015, she met with Gonzalez and reviewed the PRCS conditions with him.  She read aloud each of the terms and conditions to him.  One of those conditions was, "report as directed."  Rodriguez also reviewed with Gonzalez a separate document called notice and conditions.  He initialed each of the conditions and signed the document in her presence.  Rodriguez personally reviewed the terms and conditions of PRCS with Gonzalez because from July 2013 until April 30, 2015, he had absconded from supervision on several occasions.

Gonzalez appeared delusional, confused, and very lost when he met with Rodriguez on April 30, 2015.  After meeting with Rodriguez, Gonzalez was taken directly from her office to a facility for a mental health assessment and placed on a

4

section 5150(a) hold.[1]  Rodriguez directed Gonzalez to report to her immediately upon his release from the section 5150(a) hold.

Rodriguez testified that Gonzalez was released from the section 5150(a) hold on May 9, 2015.  He did not report to Rodriguez upon his release.  Rodriguez learned on May 12, 2015, from the mental health assessment provider that Gonzalez had been released on May 9.  Rodriguez did not learn of Gonzalez's whereabouts until he was arrested in July 2015.

Rodriguez had been Gonzalez's probation officer since July 2013.  As of trial, she had met with Gonzalez in person five times.  She had reviewed the notes of his prior probation officers and saw nothing to indicate mental health concerns.  Rodriguez had made notes that in one contact with Gonzalez, he had appeared "delusional and confused" and "very lost."  She also had reviewed a report in which the preparer had noted that Gonzalez suffers from "mild retardation."  Another probation officer had made a note that Gonzalez seemed "troubled."

Rodriguez testified that a section 5150(a) hold is not the same as being in custody.  A term and condition of PRCS, however, was that Gonzalez "report as directed."

Rodriguez explained that the PRCS terms and conditions required Gonzalez to inform the Probation Department of his residence.  At one point, he was placed on a global positioning system (GPS) monitor.  He had stopped charging the GPS battery, but

_____

[1]  Section 5150(a) states, in relevant part:  "When a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff, as defined by regulation, of a facility designated by the county for evaluation and treatment, designated members of a mobile crisis team, or professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services."

on the day he was placed on the section 5150(a) hold, Rodriguez was able to find him, in Stanton, at his last known location according to the GPS. When Rodriguez learned that Gonzalez had been released from the section 5150(a) hold, but had not reported to her, she went to the spot in Stanton where she had previously found him. He was not there. Gonzalez did not report his residence to Rodriguez, and she did not know his whereabouts. Rodriguez testified that a probationer is usually given 72 hours to notify the Probation Department of a change in residence.

Rodriguez testified that Gonzalez was transient and had no residence. She had asked Gonzalez specifically to contact her about his whereabouts and told him to report to her when he was released from the section 5150(a) hold.

## III.

### The Trial Court's Ruling

The trial court granted the Petition and found Gonzalez in violation of PRCS. The court stated: "[T]here is a preponderance of evidence to support one piece of this allegation. And I would agree with the petitioner in this respect: This is about as difficult a case as you're probably going to see from a petitioner's side absent a flat[-]out finding it didn't occur. [¶] So the court does find there's preponderance of the evidence to believe the petition is true in one aspect, and that is that he did not provide any information to probation within any reasonable amount of time; not three days prior to, not in advance of, not three days after. He never did as to his change of residence. And that is something that was reasonable and that he should, and appeared to have been able to comply with."

The trial court expressed concern over Gonzalez's mental health but found there was insufficient evidence to prove that Gonzalez was unable to comply with the terms and conditions of PRCS. The court stated: "[U]nfortunately, although we all know he was 5150'd, that's all we know. 5150 under the law is anyone who is a danger to themselves or others. It doesn't really mean they don't understand the difference

6

between reality and delusion.  Those are two different issues.  [¶]  So whether he suffered at all from truly what is a medical delusion, or just was a danger to himself or others, which is the standard, is unclear to the court.  [¶]  So at this point there would have to be additional information from the defense or someone who can provide it to show that that was a defense.  [¶]  If there was evidence suggesting he was unable to know the difference it would be a complete defense, because I would agree with you.  It would show he could not comply.  [¶]  But that was not shown.  He was 5150, meaning he was a danger to himself and others.”

The trial court revoked PRCS and ordered it reinstated with a period of 180 days’ incarceration in jail and 68 days of credit.  Gonzalez timely appealed.

## DISCUSSION

### I.

### Statutory Framework

The PRCS Act was enacted to “improve public safety outcomes” and facilitate certain offenders’ “successful reintegration back into society.”  (Pen. Code, § 3450, subd. (b)(5); see *People v. Espinoza* (2014) 226 Cal.App.4th 635, 641.) Low-level offenders released from prison are subject to community supervision provided by the probation department of the county to which the person is being released (Pen. Code, § 3451, subd. (a)), according to a postrelease strategy developed by each county’s board of supervisors (*id.*, § 3451, subd. (c)(1)).  Unless his or her supervision is tolled for reasons not relevant here, “[a] person shall not remain under supervision . . . on or after three years from the date of the person’s initial entry onto [PRCS].”  (*Id.*, § 3455, subd. (e); see *id.*, § 3456, subd. (a)(1).)

Penal Code section 3453 imposes many mandatory conditions of PRCS. Such conditions include that “[t]he person shall report to the supervising county agency as directed by that agency” (Pen. Code, § 3453, subd. (e)) and “[t]he person shall inform

7

the supervising county agency of any pending or anticipated changes in residence, employment, education, or training" (*id.*, § 3453, subd. (i)(1)).  The local supervising county agency "shall establish a review process for assessing and refining a person's program of postrelease supervision" (*id.*, § 3454, subd, (a)), and "may determine additional appropriate conditions of supervision listed in Section 3453 consistent with public safety" (*id.*, § 3454, subd. (b)).

"At any time during the period of [PRCS], if a peace officer has probable cause to believe a person subject to [PRCS] is violating any term or condition of his or her release, the officer may, without a warrant or other process, arrest the person and bring him or her before the supervising county agency . . . ."  (Pen. Code, § 3455, subd. (b)(1).)  If the supervising county agency determines that intermediate sanctions are not appropriate, the agency shall petition the court pursuant to Penal Code section 1203.2 to revoke, modify, or terminate PRCS.  (*Id.*, § 3455, subd. (a).)  Subdivision (b) of section 1203.2 authorizes the court or parties to bring a motion for modification, revocation, and termination of supervision, "pursuant to this subdivision."  (*Id.*, § 1203.2, subd. (b)(1).)[2]  The petition must include a written report from the supervising county

_____

[2]  Subdivision (b)(1) of Penal Code section 1203.2 continues:  "The court in the county in which the person is supervised has jurisdiction to hear the motion or petition, or for those on parole, either the court in the county of supervision or the court in the county in which the alleged violation of supervision occurred.  A person supervised on parole or [PRCS] pursuant to Section 3455 may not petition the court pursuant to this section for early release from supervision, and a petition under this section shall not be filed solely for the purpose of modifying parole.  This section does not prohibit the court in the county in which the person is supervised or in which the alleged violation of supervision occurred from modifying a person's parole when acting on the court's own motion or a petition to revoke parole.  The court shall give notice of its motion, and the probation or parole officer or the district attorney shall give notice of his or her petition to the supervised person, his or her attorney of record, and the district attorney or the probation or parole officer, as the case may be.  The supervised person shall give notice of his or her petition to the probation or parole officer and notice of any motion or petition shall be given to the district attorney in all cases.  The court shall refer its motion or the petition to the probation or parole officer.  After the receipt of a written report from the probation or

8

agency that explains "the relevant terms and conditions of [PRCS], the circumstances of the alleged underlying violation, the history and background of the violator, and any recommendations." (*Id*., § 3455, subd. (a); see Cal. Rules of Court, rule 4.541(c).)

"Upon a finding that the person has violated the conditions of [PRCS], the revocation hearing officer shall have authority to do all of the following: [¶] (1) Return the person to [PRCS] with modifications of conditions, if appropriate, including a period of incarceration in a county jail. [¶] (2) Revoke and terminate [PRCS] and order the person to confinement in a county jail. [¶] (3) Refer the person to a reentry court pursuant to [Penal Code s]ection 3015 or other evidence-based program in the court's discretion." (Pen. Code, § 3455, subd. (a)(1)-(3).) The period of incarceration under Penal Code section 3455, subdivision (a)(1) shall not exceed 180 days in a county jail. (*Id.*, § 3455, subd. (d).)

An order revoking and reinstating PRCS is appealable under Penal Code section 1237, subdivision (b) because, we conclude, such an order affects the substantial rights of the party. (See *People v. Osorio* (2015) 235 Cal.App.4th 1408, 1412 ["A parole revocation order is a postjudgment order affecting the substantial rights of the party, and is therefore appealable."].)

## II.

### The Appeal Is Not Moot.

The Attorney General argues this appeal is moot because Gonzalez completed his 180-day jail term and was discharged from PRCS in December 2015. "[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief." (*Lincoln Place Tenants Assn. v. City of Los Angeles* (2007)

---

parole officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or terminate the supervision of the supervised person upon the grounds set forth in subdivision (a) if the interests of justice so require."

9

155 Cal.App.4th 425, 454.) "'[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.'" (*People v. Herrera* (2006) 136 Cal.App.4th 1191, 1198.) The Attorney General argues we no longer can provide Gonzalez any effective relief.

We decline to dismiss the appeal as moot because the challenged order may yet have "'disadvantageous collateral consequences.'" (*People v. Ellison* (2003) 111 Cal.App.4th 1360, 1368-1369.) In the event Gonzalez is convicted of a new offense, performance on PRCS likely could be considered for purposes of deciding whether to grant probation (see Cal. Rules of Court, rule 4.414(b)(2) [prior performance on "probation or parole" is a factor in deciding to grant or deny probation]) or as a circumstance in aggravation in sentencing (see *id.*, rule 4.421(b)(5) [unsatisfactory prior performance on probation or parole is a circumstance in aggravation]; *People v. Osorio*, *supra*, 235 Cal.App.4th at p. 1412 ["Should defendant suffer a further criminal conviction, the parole revocation may be used as part of his sentencing determination."]).

California Rules of Court, rules 4.414(b)(2) and 4.421(b)(5) refer only to performance on probation or parole and do not mention PRCS. But PRCS, though not identical, is similar to parole, the main difference being that PRCS is conducted by a county agency rather than by the California Department of Corrections and Rehabilitation. (*People v. Lewis* (2016) 4 Cal.App.5th 1085, 1089, fn. 2; *People v. Gutierrez* (2016) 245 Cal.App.4th 393, 399.) It is therefore likely that performance on PRCS would be considered by a court in considering the relevant factors under rule 4.414(b)(2) or rule 4.421(b)(5).

If the appeal were moot, we would decline to dismiss it for the additional reason that issues arising out of PRCS or concerning interpretation of the PRCS Act can elude review. "We have discretion to decide a case that, although moot, poses an issue of

10

broad public interest that is likely to recur." (*People v. Osorio*, *supra*, 235 Cal.App.4th at p. 1411.)  The maximum length of incarceration for a PRCS violation is brief (180 days) (Pen. Code, § 3455, subd. (d)), and a person cannot be under PRCS for more than three years (*id.*, § 3455, subd. (e)).  Thus, an appeal from an order revoking PRCS may become subject to a mootness claim before a decision can be rendered.

## III.

### The Trial Court Erred by Finding Gonzalez Violated the Condition That He Report Any Change in Residence.

A.  *Standard of Review*

An order revoking probation is reviewed under the abuse of discretion standard.  (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447; *People v. Urke* (2011) 197 Cal.App.4th 766, 773.)  The trial court's factual findings are reviewed for substantial evidence.  (*People v. Urke*, *supra*, at p. 773.)  The same standards should apply to an order revoking PRCS.

B.  *Gonzalez Had No Change in Residence to Report.*

"Penal Code section 1203.2, subdivision (a) authorizes a trial court to revoke probation 'if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his or her probation . . . .'" (*People v. Jackson* (2005) 134 Cal.App.4th 929, 935.)  A parole or probation violation must be willful to justify revocation of parole or probation.  (*People v. Rodriguez* (2013) 222 Cal.App.4th 578, 594 [probation revocation]; *People v. Cervantes* (2009) 175 Cal.App.4th 291, 295 [same]; *People v. Galvan* (2007) 155 Cal.App.4th 978, 982 [same].)

The Petition alleged that Gonzalez violated the condition that he report to his probation officer within two working days following "any release from custody" and

11

that he inform his probation officer of "your residence" or of "[a]ny change or anticipated changes in residence." The trial court found that Gonzalez violated PRCS by not reporting his "change of residence" after being released from the section 5150(a) hold.

The PRCS Act does not define "residence." It has been said that "'[r]esidence, as used in the law, is a most elusive and indefinite term.'" (*Smith v. Smith* (1955) 45 Cal.2d 235, 240.) The Sex Offender Registration Act precisely yet broadly defines "residence" to mean "one or more addresses at which a person regularly resides, regardless of the number of days or nights spent there, such as a shelter or structure that can be located by a street address, including, but not limited to, houses, apartment buildings, motels, hotels, homeless shelters, and recreational and other vehicles." (Pen. Code, § 290.011, subd. (g).)

In determining whether Gonzalez was required to report a change in residence, we use the definition of residence found in Penal Code section 290.011, subdivision (g). Under that definition, Gonzalez was not in violation of the terms and conditions of PRCS by failing to report to the Probation Department upon his release from the section 5150(a) hold. It was undisputed that Gonzalez was homeless, both before and after the section 5150(a) hold. Rodriguez testified that Gonzalez was homeless and had no residence. No evidence was presented that Gonzalez had "one or more addresses at which [he] regularly resides." (Pen. Code, § 290.011, subd. (g).)

Involuntary placement under a section 5150(a) hold does not turn the treatment facility into a residence. The person subject to the hold does not "regularly reside[]" at the treatment facility. (Pen. Code, § 290.011, subd. (g).) A section 5150(a) hold lasts 72 hours at most. Nor does placement under a section 5150(a) hold constitute custody. When Gonzalez was released from the facility at the end of the section 5150(a) hold, he returned to the street. He did not change his residence because he had none. There was no evidence that Gonzalez had been living "regularly" at "a shelter or structure that can be located by a street address." (Pen. Code, § 290.011, subd. (g).) In fact, when

12

Rodriguez tried to find Gonzalez at the location she had previously found him, he was not there. Thus, Gonzalez never had a residence, and could not have had a change of residence to report. It was error, therefore, for the trial court to find that Gonzalez's failure to report to the Probation Department after his release from the section 5150(a) hold was a violation of the terms and conditions of PRCS.[3]

Issues over a homeless person's obligation under the PRCS Act to report could be resolved by amending the PRCS Act to define "residence" and clarify the reporting obligation of those persons who do not have a residence. The Sex Offender Registration Act, unlike the PRCS Act, recognizes that a person subject to registration might be living as a transient. (Pen. Code, § 290.011.) The Sex Offender Registration Act defines "transient" to mean "a person who has no residence" (*id.*, § 290.011, subd. (g)) and sets forth a means by which transients can comply with registration requirements (*id.*, § 290.011, subd. (a)). The Sex Offender Registration Act requires a transient to register within a certain timeframe after release from incarceration, placement, commitment, or probation, and then "[b]eginning on or before the 30th day following initial registration upon release, a transient shall reregister no less than once every 30 days thereafter. (*Id.*, § 290.011, subd. (a).)[4] We respectfully urge the

---

[3] The Attorney General argues that Gonzalez had "a duty to inform probation of his current location." The terms and conditions of PRCS required Gonzalez to report to the Probation Department any change or anticipated change of "residence, employment, education, or training." The terms and conditions did not require him to report his current location.

[4] The full text of subdivision (a) of Penal Code section 290.011 is: "He or she shall register, or reregister if the person has previously registered, within five working days from release from incarceration, placement or commitment, or release on probation, pursuant to subdivision (b) of Section 290, except that if the person previously registered as a transient less than 30 days from the date of his or her release from incarceration, he or she does not need to reregister as a transient until his or her next required 30-day update of registration. If a transient convicted in another jurisdiction enters the state, he or she shall register within five working days of coming into California with the chief of police of the city in which he or she is present or the sheriff of the county if he or she is

Legislature to amend the PCRS Act to likewise define "residence" and impose reporting requirements for homeless persons.

A statutory condition of PRCS is that "[t]he person shall report to the supervising county agency as directed by that agency." (Pen. Code, § 3453, subd. (e).) Whether homeless or not, a person subject to PRCS must comply with this condition and violation of it can be a basis for revoking PRCS. In this case, Rodriguez testified that she had directed Gonzalez to report to her immediately upon his release from the section 5150(a) hold. However, the trial court did not find that Gonzalez had violated PRCS by failing to report as directed by the Probation Department after his release from the section 5150(a) hold. The trial court's order granting the Petition was based on the finding that Gonzalez failed to report a change in residence. On appeal, although the Attorney General mentions the condition to report as directed, she does not argue Gonzalez violated the condition of reporting as directed by the Probation Department and does not argue that would be an alternative ground for upholding the trial court's decision. Instead, the Attorney General argues that Gonzalez did not report a change in residence.

present in an unincorporated area or city that has no police department. If a transient is not physically present in any one jurisdiction for five consecutive working days, he or she shall register in the jurisdiction in which he or she is physically present on the fifth working day following release, pursuant to subdivision (b) of Section 290. Beginning on or before the 30th day following initial registration upon release, a transient shall reregister no less than once every 30 days thereafter. A transient shall register with the chief of police of the city in which he or she is physically present within that 30-day period, or the sheriff of the county if he or she is physically present in an unincorporated area or city that has no police department, and additionally, with the chief of police of a campus of the University of California, the California State University, or community college if he or she is physically present upon the campus or in any of its facilities. A transient shall reregister no less than once every 30 days regardless of the length of time he or she has been physically present in the particular jurisdiction in which he or she reregisters. If a transient fails to reregister within any 30-day period, he or she may be prosecuted in any jurisdiction in which he or she is physically present."

14

## DISPOSITION

The postjudgment order granting the Petition is reversed.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.