Filed 8/15/25  P. v. Boyd CA5
Opinion following transfer from Supreme Court

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>JONATHAN KEITH BOYD,<br><br>　　　Defendant and Appellant. | F085425<br><br>(Fresno Super. Ct. No. F18904018)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  F. Brian Alvarez, Judge.

Scott Concklin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Kimberley A. Donohue, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Snauffer, J., DeSantos, J.

Defendant was convicted of several crimes involving several victims, including pimping and pandering.  In a prior appeal, this court reversed one of defendant's convictions.  (*People v. Boyd* (May 20, 2022, F078502) [nonpub. opn.].)  At resentencing, the trial court imposed the upper term on the principal count based on two factors.

In an initial opinion in the present appeal filed on January 26, 2024, we concluded that one of the factors the court relied upon (i.e., that defendant was on postrelease community supervision (PRCS)[1] at the time of the offense) was not found true by a jury or pursuant to a waiver of a jury trial.  (See Pen. Code, § 1170;[2] see also Cal. Rules of Court, rule 4.421(b)(4).)  However, we concluded the error was harmless.  The Supreme Court granted review of that decision and transferred the matter back to this court for reconsideration in light of *People v. Lynch* (2024) 16 Cal.5th 730 and *Erlinger v. United States* (2024) 602 U.S. 821.

We now conclude that, under recent precedent, the error was not harmless beyond a reasonable doubt.  As a result, we reverse the sentence and remand for resentencing.

---

[1]    "In the wake of realignment, a person released from prison is subject to a period of either parole ([Pen. Code,] § 3000 et seq.) or postrelease community supervision ([Pen. Code,] § 3450 et seq.).  [Citation.]  Parole applies to high-level offenders, i.e., third strikers, high-risk sex offenders, and persons imprisoned for serious or violent felonies or who have a severe mental disorder and committed specified crimes.  ([Pen. Code,] § 3451, subd. (b).)  All other released persons are placed on postrelease community supervision.  ([Pen. Code,] § 3451, subd. (a).)"  (*People v. Armogeda* (2015) 233 Cal.App.4th 428, 434.)

"PRCS, though not identical, is similar to parole, the main difference being that PRCS is conducted by a county agency rather than by the Department of Corrections and Rehabilitation."  (*People v. Gonzalez* (2017) 7 Cal.App.5th 370, 381, disapproved on other grounds by *People v. DeLeon* (2017) 3 Cal.5th 640, 646.)

[2]    All further undesignated statutory references are to the Penal Code unless otherwise stated.

## BACKGROUND

In an amended information filed July 13, 2018, the Fresno County District Attorney charged defendant and appellant Jonathan Keith Boyd (defendant) with several prostitution related crimes concerning three victims: Michelle M., Jessica D., and minor Toni B.

### I.      Charges Related to Victim Toni B.

In an information, defendant was charged with human trafficking of Toni B., a minor, for a sex act (count 1; Pen. Code, § 236.1, subd. (c)(2)) in a manner involving force, fear, fraud, deceit, coercion, violence, duress, menace, or threat of unlawful injury (see § 236.1, subd. (c)(2)); pimping a minor (count 2; § 266h, subd. (b)(2)); lewd act upon a child (count 3; § 288, subd. (c)(1)); and pandering of a minor under age 16 (count 4; § 266i, subd. (b)(2)).  The information alleged Toni was 13 or 15 years old when the lewd act was committed upon her.

### II.      Charges Related to Michelle M.

Defendant was further charged with human trafficking of Michelle M. to commit another crime (count 5; § 236.1, subd. (b)); kidnapping to commit another crime (count 6; § 209, subd. (b)(1)); and forcible rape (count 7; § 261, subd. (a)(2)).

### III.      Charges Related to Victim Jessica D.

Defendant was also charged with pimping (count 8; § 266h, subd. (a)); and pandering (count 9; § 266i, subd. (a)(2)) Jessica D.

### IV.      Additional Allegations.

The complaint further alleged defendant had suffered a prior strike (§§ 667, subd. (b), 1170.12, subds. (a)–(d)) and three prior prison terms (§ 667.5, subd. (b)).

### V.      Verdicts and Sentence.

A jury convicted defendant of counts 1 through 4 and 8 through 9 and found true the special allegation on count 1. In a bifurcated proceeding, the trial court found the

strike and prior prison term allegations true.[3]  The jury found defendant not guilty on counts 5 and 7.

On count 9, the court selected the upper term of 6 years, which was doubled to 12 years due to defendant's prior strike.  On count 1, the court imposed a consecutive term of 30 years to life (15 years to life, doubled).  Imposition of sentence on the remaining counts – 16 years on count 2, six years on count 3, 16 years on count 4, and 12 years on count 8 – was stayed pursuant to section 654.

The court struck imposition of penalty on the prior prison term allegations.

## VI.   Subsequent Proceedings.

Defendant appealed and this court issued a written opinion on May 20, 2022.  In that decision, we reversed the conviction on count 9, remanded for a full resentencing, and otherwise affirmed the judgment.  (*People v. Boyd* (May 20, 2022, F078502) [nonpub. opn.].)

At resentencing, the court sentenced defendant to 12 years on count 8, plus a consecutive 30-year-to-life term on count 1.  The court also selected upper terms on counts 2, 3, and 4 but stayed the terms pursuant to section 654.

## FACTS

Below we include our prior opinion's discussion of facts concerning the crimes related to Jessica D., the victim of count 8.  The resentencing court imposed the upper term on this count, which is the primary focus of the issues raised on appeal.  For further context, see our prior opinion, *People v. Boyd*, *supra*, F078502).

## I.   Text Messages with Jessica.

On March 5, 2018, defendant texted Jessica D.:  "Pick up."  Jessica responded, "We can talk later right now im bzy" and "U said fuck the clothes."  Defendant

---

**3**    Defendant waived his right to a jury trial as to the allegations in the information, which included the prior prison term allegations.

responded: "Bitch im telling u im gone kick that door in i dont givr a fuck bout you beibg busy." Later that day, defendant texted: "Pick up serious." Jessica responded, "I wont deal with u period. Cuz as i can see u always tripin off shit tht." Defendant texted Jessica: "Fuck yo life u wont even pic up the phone [N-word] om on yo room in ii ain movin."

On March 6, 2018, defendant texted Jessica: "Can u tell me car date or mot [*sic*]." Defendant then texted: "Room." After a few intervening messages, Jessica texted defendant: "Fuck I gt no condoms." Defendant responded, "What" and then said, "Charge extra."

## II.   Defendant's Jail Calls with His Mother.

In a jail call between defendant and his mother on March 3, 2018, defendant said, "I wasn't doin' no pimpin' " Defendant said the reason he had been arrested was that he "went off on 'em … in a interrogation room." Defendant said, "I didn't do it Mama that's a 14-year-old. I don't even know who that person is."[4]

Defendant's mother asked him, "[H]ow did you pay you bills son up in there?" Defendant replied, "How do I pay my bills? Jessica."

Defendant claimed to his mother that he had given the code to his phone to detectives because he had nothing to hide. Defendant claimed law enforcement "did this because" they had tried to "catch" him previously, but they "never could." So, now, law enforcement was "coming with this bullshit 'cause I – I don't know no 14-year-old females."

On another call, defendant told his mother he had problems with the Parkside Bulldogs. Defendant said the 14-year-old girl is supposed to live in the Parkside Bulldog

---

**4**   The transcript of a jail call between defendant and his mother was given to the jury while the call itself was played. The call was admitted into evidence, but not the transcript. However, the call as played for the jury was not transcribed by the court reporter, and both parties cite to the transcript. We will do the same.

area.  Defendant stated, "[A] lot of Mexicans don't like me because Jessica talks to me. They don't like Jessica because Jessica only talks to blacks."  When defendant and Jessica would walk down Belmont "they" used to tell "us" that "you all can't work between the bridge."  Jessica responded, "[W]hat do you mean work?  I ain't out here ho[e]ing."  Defendant recounted that "one time there was an incident where they pushed up on me and then it was the gang – it was – it was ugly."

When asked if defendant thought "the girl" was connected to Bulldogs gang members, defendant said, "Yes she is.  She got to be."  Defendant claimed that law enforcement had searched his phone, yet found "nothing in there, period."

Defendant acknowledged that he "used to be with known prostitutes."

Defendant's mother told defendant that she had been bringing him money every day.  Defendant said that every time she had brought him money, he wrote it down.

Defendant said he would let people use "that phone."

## III.    Defendant's Jail Call with "Lucky."

Defendant made a jail call to a woman named Lucky, who was apparently the mother of one of his children.[5]  Defendant said "they" had "got" him for human trafficking.  Defendant claimed "they" had no evidence on him.

Defendant referred to a female – presumably Jessica – who told defendant's lawyer, "I'm the only hoe that he's got."

Defendant said "[t]he only minor I ever fucked with was my baby mama and that was it."  Lucky responded, "I told you how old I was."  Defendant said, "Your pussy just gonna trap me."  Lucky responded, "But you knew I was a minor before you got that, so shut up."  Defendant said, "That was a fuckin' …entrapment for real."

---

**5**    The jury was permitted to review a transcript of a jail call between defendant and Lucky.  The call itself was admitted into evidence, but not the transcript.  Both parties cited the transcript in the original appeal.  We will do the same.

Defendant told Lucky she did not have to be single and could "be with me." Defendant said if she moved back to the area, she would have a house. Lucky said she did not want to live with defendant and his hoes. Defendant replied, "My hoes? Don't nobody stay there. My mama don't allow that. *They stay at their apartment*." (Italics added.)

## IV.     Defendant's Second Jail Call with Lucky.

Defendant had a second jail call with Lucky later that same day.[6] Defendant said it "dawned" on him that someone had set him up.

Defendant told Lucky to write down his Facebook login information because he needed her to "delete a lot of shit." He provided his e-mail address: j_money400@yahoo.com and provided a password. He told her to "erase everything" including posts and messages.

On the call, defendant referred to Jessica D. as his "main bitch."

## V.     Defendant's Jail Calls with Jessica.

Every inmate in the Fresno County Jail is given a jail identification number. Inmates must use their identification number to place phone calls. Sometimes, inmates use the identification number of another inmate to avoid detection by law enforcement. Law enforcement has caught people doing this through voice recognition and call content.

On April 22, 2018, defendant called Jessica from jail using another inmate's identification number. Defendant told Jessica they would always be together.

Defendant said a person named Brandy had told him, "[T]hat bitch set you up." Brandy said she saw a "little bitch" come out of "her room in the Californias."[7] Jessica

---

**6**     The jury was permitted to review a transcript of the second jail call between defendant and Lucky. The call itself was admitted into evidence, but not the transcript. Both parties cited the transcript in the original appeal. We will do the same.

**7**     Jessica's subsequent denial suggests the "her" in this statement was Jessica.

denied that anyone came out of the room.  She then said that if anyone came out, "it was a trick."**8**

In another jail call, Jessica described the crime of pandering to defendant. Defendant said, "[T]he victim's not coming to court against me."

During their calls together, Jessica repeatedly referred to defendant as "Blue" and "Daddy."

## VI.     August 12, 2016, Jail Call.

On August 12, 2016, an inmate called Jessica.**9**  The jail identification number used for the call belonged to one Robert Harris.  Defendant and Robert Harris had similar-sounding voices.

When asked where she was, Jessica said she was driving down "the two-way" because she wanted to "get that $100 from him."  The inmate told Jessica she needed to "pick and choose" and when she "run[s] across a good one … try to make that motherfucker your regular."  The inmate told Jessica to get two or three regulars, and she would be all right.

The inmate said that when he got out, he could get her two more phones, and she could "post like three ads on each phone and I'll just help answer the phone."  According to the inmate, once the ads were posted, her phones could ring often.  The inmate suggested they might have to leave "this" side of town and go north near River Park and "get a room."

---

**8**     According to Detective Longoria, a "trick" is a person who pays for sex.
**9**     Initially, Detective Longoria identified the inmate as defendant.  However, Detective Longoria came to question whether the inmate was defendant because the inmate repeatedly said, "[Y]ou know what I mean, you know what I'm saying." Defendant did not use that phrasing often.

Because the identity of the inmate who called Jessica in the August 12, 2016, call is unknown, we will refer to that speaker simply as "the inmate."

The inmate said he did not want Jessica "walking." The next time she was "walking" on that "track," he wanted to be with her. The inmate wanted Jessica to make the "track" miss her.

At the end of the call, the inmate and Jessica each said they loved the other.

## VII.    Inmate Account Deposit.

Jessica made deposits into defendant's account, which he could use to buy things while in custody.

## DISCUSSION

## I.    The Failure to Submit the Aggravating Factor Concerning Defendant's PRCS Status was Prejudicial

### A.    *Additional Facts*[10]

At the resentencing hearing, defense counsel argued against doubling the 15-year-to-life sentence on count 1 pursuant to defendant's prior strike. He contended that defendant's offense was not what the Legislature had in mind when it defined human trafficking. Counsel observed that aggravating circumstances had to be pleaded and proved but acknowledged the prosecutor "could not have been aware of that particular requirement although *Apprendi* [*v. New Jersey* (2000) 530 U.S. 466] has been good law for a long time."

Defense counsel also requested that the court not use the indeterminate term as the base term and impose a term of 14 years.

When asked about aggravating circumstances, the prosecutor asserted that defendant was on parole when the offense was committed. The prosecutor asserted his status was confirmed by a PRCS violation established in superior court case No. F12904145. The prosecutor asked that the court take judicial notice of that case.

---

[10]    Defendant provides a brief statement of facts concerning the underlying offenses while respondent provides none at all because the issues on appeal concern sentencing. We incorporate by reference the factual recitation from our prior decision in *People v. Boyd*, *supra*, F078502.

When asked if he had any objection, defense counsel said, "I'll just submit on it." The court granted the request for judicial notice. Defense counsel argued that an aggravated term should not be imposed "just based on [the] individual item" of a PRCS violation. The court pointed out that a court trial had also established defendant had served a prior prison term.

Before pronouncement of sentence, the court observed that the Legislature "takes a very dim view of people who would put children out for prostitution." The court continued,

> "But aggravating his particular set of circumstances is the fact that he has a long criminal history. And [defendant's] history follows him. And he wasn't even completing his last term because he was on a grant of supervision when he was committing these offenses."

In deciding not to stay the indeterminate term under section 654, the court emphasized the need for the sentence to be commensurate with defendant's culpability in prostituting a child under duress. The court repeated that the Legislature had taken a very dim view of such activity, and that defendant had a long criminal history. The court noted that defendant "had many times to remedy and correct his situation and he admits violations of parole and he had some stints in prison and that did not remedy his situation. If anything, it made him quite potentially more resolute in continuing his criminal conduct."

In selecting the upper term on count 8, the court stated:

> "Count Eight pertains to the pimping of Jessica D. The Court has to consider aggravating and mitigating circumstances and it has to now consider that pursuant to the construct of 1170(b) as it's been redrafted. And there are certain issues of proof that the People must establish in order to arrive at an aggravated term.… But there are circumstances relating to … the [d]efendant himself, under [California Rules of Court,] [r]ule 4.421(b) that the People don't have to submit to the jury and these are issues pertaining to or relating to [defendant] himself. *And the Court having taken judicial notice of the fact that he was on parole when the offense was committed, finds that to be true beyond a reasonable doubt.*

10.

*And the Court also notes its reference and mention with [defense counsel] that there was a prior court trial with regards to the prior prison term allegations. The Court had found those true beyond a reasonable doubt and, accordingly, the Court will make that same finding that he has served prior prison terms as aggravating circumstances. Using these aggravating circumstances, the Court arrives at the upper term of 12 years determinate for Count Eight.*"  (Italics added.)

**B.    *Law***

### 1.    Section 1170

A court may only impose the upper term "when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term."  (§ 1170, subd. (b)(2).)  The facts underlying those circumstances must have been stipulated to by the defendant or have been found true beyond a reasonable doubt by the jury or by the judge in a court trial.  (*Ibid*.)  However, the court may consider the defendant's prior convictions based on a certified record of conviction without submitting the prior convictions to a jury.  (*Id*., subd. (b)(3).)

### 2.    Constitutional Considerations

Not only is this requirement imposed by statute, it also arises from the Constitution.  The constitutional right to a jury trial requires that virtually any fact that increases the prescribed range of penalties to which a criminal defendant is exposed must be resolved by a unanimous jury beyond a reasonable doubt or admitted in a guilty plea. (*Erlinger v. United States*, *supra*, 602 U.S. at p. 834.)  There is one narrow exception whereby judges may find "the fact of a prior conviction."  (*Id.* at p. 837.)  But even other factors related to prior convictions, such as whether they occurred on separate occasions, must be decided by a jury.  (*Id.* at p. 835.)

Pertinent here, the California Supreme Court has recently held that the aggravating factors of whether a defendant's prior convictions were of "increasing seriousness" and whether defendant's performance on probation was "unsatisfactory" must be submitted to

a jury (absent a waiver or stipulation from the defendant). (*People v. Wiley* (2025) 17 Cal.5th 1069, 1076.)

### 3. Prejudice.

In *People v. Lynch*, *supra*, 16 Cal.5th 730, the Supreme Court held, "in a case where the judgment is not yet final, a sentence imposed under former section 1170[, subdivision] (b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute." (*Id*. at p. 743.)

"Lack of a jury trial is not harmless under *Chapman* if 'the record contains evidence that could rationally lead to a contrary finding' with respect to the aggravating fact at issue." (*People v. Wiley*, *supra*, 17 Cal.5th at p. 1087.)

### C. *Analysis*.

Because the prior prison term allegation (Cal. Rules of Court, rule 4.421(b)(3)) was found true beyond a reasonable doubt by a court after defendant waived a jury trial, the court's reliance on those factors did not run afoul of *Erlinger* or its progeny.

However, defendant never waived his right to a jury trial on the issue of whether he was on PRCS status when the offense was committed. (Cal. Rules of Court, rule 4.421(b)(4).) Consequently, the court's reliance on defendant's PRCS status at the time of the offense runs afoul of the principles elucidated in cases like *People v. Wiley*, *supra*, 17 Cal.5th 1069. The Attorney General concedes this error, but argues it was harmless.[11]

---

[11] Respondent also contended in original briefing that defense counsel forfeited any challenge to the trial court's use of aggravating factors to impose an upper term sentence. We agree that defense counsel should have objected to the court's taking of judicial notice and its consideration of PRCS status if he desired to have the issue reviewed on appeal. However, defendant also claims counsel was ineffective on these grounds. Resolving that contention would require us to determine whether the allegedly ineffective

In our original opinion in this appeal, we found the error at issue harmless because we asked whether there was a reasonable probability that the trial court would have imposed a sentence other than the upper term in light of the aggravating circumstances that were properly established. The case we cited for that proposition is no longer citable. More importantly, the Supreme Court undertook a different inquiry in the analogous[12] case of *People v. Wiley*.

There, the Supreme Court held that "[l]ack of a jury trial is not harmless under *Chapman* if "the record contains evidence that could rationally lead to a contrary finding" with respect to the aggravating fact at issue." (*People v. Wiley*, *supra*, 17 Cal.5th at p. 1087.) Consequently, even though we remain convinced that the sentencing court would have made the same sentencing decisions even if it only considered the properly established factor (i.e., prior prison term), that is no longer the initial focus of our inquiry. Instead, we look to whether there is any evidence that could rationally lead to a contrary finding on the improperly established factor (i.e., the PRCS status factor).

Before we undertake the inquiry, we must address defendant's contention that we are only to look to evidence presented *to the jury*. We reject this assertion because that is not what the Supreme Court did in *Wiley*. Instead, it looked to the evidence presented to the court at the sentencing hearing and asked if a reasonable jury could have found in

---

assistance was prejudicial. This inquiry overlaps substantially with the prejudice inquiry on the merits. And, as explained below, we conclude the court's improper consideration of PRCS status was not prejudicial, which also means the failure to object was also not prejudicial to defendant.

[12] *Wiley* involved the aggravating circumstances of (1) a defendant's prior convictions are of "increasing seriousness" and (2) defendant's performance on probation was "unsatisfactory." (*People v. Wiley*, *supra*, 17 Cal.5th at p. 1076.) While the material aggravating circumstance in this case is different, i.e, – whether defendant was on PRCS when the crime was committed (Cal. Rules of Court, rule 4.421(b)(4)) – we see no reason to apply a different harmlessness standard.

favor of defendant on that evidence. The *Wiley* court answered that question in the affirmative and, as a result, found the error prejudicial.

Defendant argues this approach is "circular" because one cannot "prove that the trial court's improper reliance on the court file was harmless by asking the reviewing court to do the same." But the error here was not the court taking judicial notice of the file from defendant's PRCS violation case. The error was failing to submit the issue of PRCS status to the jury (or, alternatively, failing to disregard the factor while making sentencing decisions). And the harmlessness of *that* error *can* be assessed by looking at evidence before the court and asking what a reasonable jury could have found based thereon.

In fact, it is defendant's contrary argument that is circular. If the harmlessness of failing to submit an issue to a jury can only be established by pointing to what was submitted to the jury, the error could never be harmless.

We will follow the Supreme Court's lead and look at the evidence cited to the trial court at sentencing and determine whether a reasonable jury could have found in favor of defendant on that evidence. If so, the error is prejudicial.

Here, the prosecutor relied on the probation report and judicial notice of defendant's PRCS violation case number F12904145. The probation report reflects that in 2016, defendant was sentenced to three years in prison and that he would be released from PRCS on December 16, 2017. The notation even includes the superior court case number, F12904145-1B. However, this evidence that defendant was on PRCS until December 16, 2017, does not end our inquiry.

Defendant's pimping conviction on count 8 was based on Jessica depositing money into defendant's prison account and paying his bills while in custody. Defendant was arrested in 2018, so these acts would have necessarily occurred no earlier than

14.

2018.[13]  Yet, the probation report indicated that defendant was released from PRCS in December 2017. Consequently, there is a reasonable possibility a jury could conclude that defendant was not on PRCS "when the crime was committed" (Cal. Rules of Court, rule 4.421(b)(4).)

As a result, we must find the error of failing to submit the issue to the jury prejudicial and remand for resentencing.[14]  The court retains discretion at resentencing, and we express no opinion on how the court should exercise that discretion.  (See *Lynch*, *supra*, 16 Cal.5th at p. 764 ["nothing in section 1170[, subdivision] (b)(2) prohibits the court from imposing an upper term sentence based on a single, properly proven aggravating circumstance *if*, in the court's discretion, *that circumstance alone* justifies a sentence exceeding the middle term"].)

## II.     Error in the Abstract of Judgment.

Defendant contends and the Attorney General concedes that the abstract of judgment should have reflected 1,738 days of actual custody credits, plus 272 days of local conduct credit, for a total of 2,010 days of credit against defendant's sentence. While this claim is moot in light of the disposition, we note the issue to avoid its repetition on remand.

### DISPOSITION

The sentence is reversed and the matter remanded for a full resentencing.  In all other respects the judgment is affirmed.

---

**13**     These are the acts that constituted "living" or "deriving support or maintenance" from the proceeds of prostitution.  (See § 266h, subd. (a).)

**14**     Because there will be a full resentencing, we do not reach defendant's remaining claims.